Good morning ladies and gentlemen. Welcome to the Ninth Circuit. We have six matters on the docket, only three of which will be argued. Matters that are submitted at this time are United States v. Ruiz Hernandez, United States v. Sam, and Rose v. Reeves. The first case for argument this morning is Rue v. Roberts. Counsel, please proceed. Good morning, Your Honors. May it please the Court. My name is Keith Hilsendegger. I'm with the Federal Public Defender's Office, and I represent the petitioner Cedric Rue. I'd like to save two minutes for rebuttal, because I know that I'm likely to get a lot of questions about all the issues in this case. I want to remember to save a little bit of time in my opening presentation for a short statement about the merits, but if I may, I'd like to talk a lot about the statute of limitations issues in this case, if I may. The district court correctly ruled that equitable reasons justified overlooking the passing of the statute of limitations and reaching the merits of Mr. Rue's claim under Miller v. Alabama. Did the district court actually rule that? That was the recommendation report of the magistrate judge, and as I am going to reject this claim on the merits, I'm going to assume that the magistrate judge's decision was correct. Isn't that what happened here? Yeah, that is what happened, Your Honor. So did the district court ever really address the statute of limitations claim, other than to say, I assume equitable tolling for purposes of my decision? That is the extent of the district judge's yes, Your Honor, and I think that that statement amounts to an adoption of the magistrate judge's reasons. Here's the question I have for you. Let's assume that we agree with you that the proceedings that your client went through in the state court violated the Miller rule. On the statute of limitations issue, why shouldn't we send it back to the district court to decide? We don't really have a decision by anyone. Well, this court reviews the... I know we could decide it. Right, right. Well, but, and you should, Your Honor, because this court reviews the district court's findings de novo. The judge didn't see any reason to disagree with them. He could have. He could have. The state, if I remember correctly, the state objected to the magistrate judge's determination that and the judge presumably reviewed those objections de novo, because he was required to do so, and he said they were correct. And I think that ruling is sufficient for this court to take up the issue and decide whether that was correct, if it decides that the issue is before it. Counsel, I'm far less troubled about the equitable tolling issue than I am how Miller applies here. Okay. So if we may, I'd like to focus your attention on that. The state court of appeals determined, and I want to get this right, the Arizona revised statute section 13-716 remedied any unconstitutionality in the sentencing scheme, because the parole was now available to juvenile defenders. As you know, in Montgomery, the court, Supreme Court, said it was okay to correct Miller type problems with an amended statute. So my question to you is, given the fact that your client, on a second hearing, had, he was evaluated, he was young, development of the brain, et cetera, all the things that Miller talked about, since you had a revised statute, parole was a possibility, and all those Miller, as brought to us by Montgomery, a problem in this case? The court of appeals made a critical mistake. Section 716 does not apply to Mr. Rue, because Because he never got a sentence of less than LOP. Correct, Your Honor. Section 716 only applies to actually grant juvenile prisoners parole when the there should be a possibility of release after 25 years. That, section 716 was designed to partly remedy the fact that the Arizona legislature abolished the parole scheme in 1994, and in its wisdom, the legislature decided that those juvenile defendants for whom the sentencing judge decided that there should be a possibility of release, which, absent a parole scheme, is just something that the legislature thought should be given parole. Otherwise, the Arizona Court of Appeals pointed to its prior decision in the Vera case, which said that, otherwise, the sentencing scheme was effectively mandatory. Let's assume that Miller Montgomery applies, for the purpose of the question I'm about to ask you. Okay. Wasn't there evidence at the sentencing stage about impulsivity versus incorrigibility, the kind of thing that Montgomery talked about? I have two answers to that question, Your Honor, and the first answer I want to say is there was evidence about that. It was undisputed, and all of that evidence suggested that Mr. Rue had the capacity to change over time. Those defendants are not eligible under Miller for a life without parole sentence. The second answer I have, Your Honor, is that didn't matter because the sentencing scheme did not allow the judge to impose a sentence that had any meaningful possibility of release, no matter what sentence he imposed. Assume that part away for a second. I understand the argument that Arizona was a mandatory LWOP state at the time your client was sentenced. Even if it wasn't, under the statutes, was the sentencing judge required at all to look at incorrigibility or make any decision? The statute just simply said you balance the aggravators and the mitigators. It's now 752. It was a different number then. That's right. And the judge, in his discretion, looks at the aggravators and the mitigators and makes a decision. So even if the judge had discretion at the time as to the substantive part of Miller and Montgomery, which is that you're supposed to not use any specific words but make a determination of irremediability, was there any Arizona instruction that a judge should do so? No. Not at all. Does it make a difference, though, counsel? The Supreme Court was concerned that sentencing minors to life without a possibility of parole was unconstitutional. But they also recognized it was gonna affect a lot of people, a lot of cases, and so on. And they wanted to be sure that each defendant in that situation had a sentencing hearing where the issues of impulsivity, youth, et cetera, et cetera, the possibility of redemption were considered. I think Montgomery made it clear that this didn't have to follow an exact script. They wanted to be sure, though, that the possibility was there. In this particular case, your client killed several people at different times. And so we're talking about somebody that... Excuse me? Yeah. One person. It's just one person. The trouble is we have three cases today. So many people killed. Anyway, what can I say? Anyway, the judge was concerned about these things. He concluded, after hearing the testimony, that he was really incorrigible in terms of a change. So why doesn't that satisfy the requirements of Miller? I wanna answer your question, and I wanna save the balance of my time. Of course. Your honor. The reason it doesn't satisfy the required statements of Miller is... The upshot of Miller is sentencing of juveniles has to be different than sentencing for adults. There is nothing about this sentencing hearing that would have been different if Mr. Rue had been 21 or 41 at the time of the sentencing hearing. Well, isn't the shorter answer to the question that the judge did not make a finding of incorrigibility in any form whatsoever? Because under Arizona law at the time, that was not a consideration. That is the shorter answer, and yes, that is the shorter answer. You can save the rest of your time. I will save the balance of my time for rebuttal. Just one quick thing, and I'm sure Judge Smith will give you a little time on rebuttal. He did listen to expert testimony that said this individual is capable of change, correct? And as I recall, your honor, he credited that testimony in mitigation. Yes. Thank you. Very well. Let's hear from the government. Good morning. Good morning, your honor. May it please the court. My name is Andrew Riley. I'm an assistant attorney general for the state of Arizona, and I'm appearing on behalf of respondents in this matter. To begin, turning with the merits argument of Miller, as that seems to be the focus of the inquiry so far, Miller... All that Miller really required was that the trial court, that the defendant in this case, the juvenile, get an individualized sentencing under a scheme that affords discretion to the trial court. That's plainly not true. That's not what Montgomery says. Montgomery says Miller has both a procedural and substantive component. The procedural component is that he get this individualized hearing and be able to have this information considered. The substantive component is that only the rarest of juvenile offenders ought to be sentenced to LWOP. The court says the judge doesn't have to make that determination in any particular way, but that's the substantive part of Miller slash Montgomery. So my question is, where in this record can I find any indication that the judge made a determination of incorrigibility? Well, the substantive aspect of it is a substantive rule of consideration. So your view is that all that Miller requires is that the judge hear evidence about this. He's not required to use it in any particular way. He's required to consider it. Isn't he required to consider it on the issue of incorrigibility and irremediability? Don't those exact words appear in Montgomery? Sure, but Montgomery doesn't require any sort of specific finding. Oh, I agree. I agree. I'm not talking about a specific finding. I'm just trying to look at this record and see how I can possibly make the conclusion that the sentencing judge was considering incorrigibility, as opposed to simply weighing a list of aggravators and mitigators, which is what the statute told him to do. Because that was the evidence that was presented before him. Well, that may be the evidence that was presented before him, but the question is whether or not there's any indication on this record that he used that evidence to make the kind of decision that Montgomery and Miller require. Well, the evidence is that under state law, he's presumed to consider everything that's presented before him. We're missing each other. He considered everything. He was a careful judge. Indeed, Miller hadn't come down yet, so he didn't know what he was supposed to do. But if a judge today got this evidence in front of him, because it's a Miller and Montgomery reply retroactively, wouldn't the judge in some form or another have to make a determination of incorrigibility before imposing an LLOP sentence? Not in any form, but isn't that what Montgomery says you have to do? To make a specific... I mean... Don't keep changing the question. I told you it doesn't have to be in a specific form. Doesn't the judge at the end of the day have to make, in order to impose an LLOP sentence, internally, externally, in whatever way, a determination that this particular juvenile is irremediable or incorrigible? I don't believe that's the... You don't think that's what Miller and Montgomery hold? I do not believe so. Does the government believe this is almost like a 3553A evaluation? The judge is supposed to consider that in a sentence, in a federal setting, but does not necessarily have to tick through each of the elements. Is that your analogy? Certainly, Your Honor. I mean, when we consider, under the statute, it says it's considered the age, but to say that I consider it a juvenile's age, it's not just a number. That's not what... Okay, I consider that you're 16, that's it. That ends my analysis. No, it's everything that goes with it. So the state's position in this, and I suppose the other two cases that are before us, is that there's no requirement under Miller and Montgomery for a sentencing judge to weigh transient immaturity against irreparable corruption. No requirement whatsoever. To... I mean, the requirement... Or without making specific findings, if that, in the record, if there's been enough... I'm not talking about findings for the purpose of the question I just asked you. There's no requirement, post Miller, post Montgomery, for a sentencing judge facing a juvenile offender to weigh transient immaturity against irreparable compulsion or corruption. Post Montgomery, it would seem as though there would be, at a sentencing now, that there would be some... That that specific weighing on the record... So, isn't that what retroactivity is all about? The Supreme Court says this applies back. Yes. So are you arguing that Montgomery doesn't apply to this case? I am arguing, yes, that Montgomery does not apply to this case. Miller... Didn't this... That's... Hasn't every court to have addressed this issue so far, at least that I can know it's part of Miller? That's what the Supreme Court said. The Supreme Court said, we made clear in Miller the following. Now, to be fair, Justice Scalia said, no, you didn't, but we don't get to count the dissenters. And the majority said, this is what we said. We said that it has both a procedural and substantive component, and the substantive component is the one that Judge Hawkins is talking about. You not only have to hear the evidence, you gotta use it in a certain way. Assuming that's what it said, and assuming that it applies here, that wasn't done here, was it? Well, I think it was done here. It wasn't done with the... There wasn't a specific way... Well, what in Arizona law at the time told the judge to do that? The Arizona law just said, weigh the aggravators against the mitigators. Didn't say, look for irremediability or transient immaturity or corruption. It just said... And I was an Arizona judge, and we had to do this from time to time. You just stuck the mitigators on one side and the aggravators on another, and you saw which one tipped which way. But you didn't look for irremediability, did you? Well, the statute didn't specifically... It didn't limit him in any way, and since the evidence was presented before him, the question becomes, is... He didn't use permanent corrigibility, he didn't use transient immaturity, nor should he be faulted for failing to use those specific terms. Let me phrase this a little bit differently than my colleague. Let's assume for a moment that, of course, the judge didn't know anything about Miller, it didn't exist yet, but all of the evidence that would have been required for an appropriate Miller evaluation was presented to him, the whole thing. Yes, sir. As if Miller existed, or indeed if Mike Elmer existed. And the judge made a determination with all of that in mind, if it had been post Miller, post Montgomery, it would have clearly qualified. Would it still make it in this setting, whereas my colleague pointed out under Arizona law at the time, there was no requirement to weigh that. But if the evidence was there, is that sufficient to meet the requirement of Miller as interpreted by Montgomery that we have today? Yes, Your Honor. There's nothing in the statute that prohibited the court from making that at that given time. And nothing that required it. Nothing that required it. Let me ask you a question on an entirely different topic. Certainly. Although it still merits. The Supreme Court in Miller said that at the time that Mr. Rue was sentenced, Arizona had a mandatory LWOP scheme, right? No. Well, don't... You said the Supreme Court didn't say that? The Supreme Court said, here are the states with mandatory LWOP and Arizona is one of them. One of them is listed as... It's listed as one of them because of the abolition of parole. And we all know since Graham that the possibility of executive clemency is not sufficient under Miller. The Supreme Court, right or wrong, they're often wrong, but we're stuck with them. What? We're stuck with them. The Supreme Court, right or wrong, said this was a mandatory LWOP system. That's established Supreme Court law. Doesn't that end our analysis? No, it's... At that given time, again, it's something that can be fixed in the future and it was fixed in this case. It wasn't fixed in any way that helps him. He was required under the system at the time to be sentenced to LWOP. The fact that you've now fixed the system for people who weren't doesn't help Mr. Rue, does it? No, but he had the availability at that... The judge had the availability at that time to... Well, see, I actually think you may be right as a matter of state law, but unfortunately, in this job, I'm required to follow the Supreme Court. And the Supreme Court said it's a mandatory LWOP system. It said it three times in the decision that Arizona's system is mandatory LWOP and this is the kind of system that is illegal.  No, because again, there was... Under state law... Under the law at the time... Well, the Supreme Court may have been wrong. I'm giving you that. The Supreme Court may have been wrong. Can I tell the Supreme Court they were wrong? No, you can't tell the Supreme Court. So I have to believe them, don't I? The Supreme Court also said that you can sort of breathe life back into this. He was saying... By making everybody eligible for parole. What the Supreme Court said was, you don't have to make everybody eligible for parole. But Arizona didn't pass a law making Mr. Rue eligible for parole. It only passed a law making others eligible for parole, correct? Those that received a less harsh sentence, at the time that he was sentenced... Yes, yes. The answer to my question is yes. The 716 did not make Mr. Rue eligible for parole, did it? No. I think Judge Hawkins has... Quick question, if you can, with a yes or no, if Rue were sentenced today in Superior Court, right here in Phoenix, would the judge have to make a determination of irreparable versus transient immaturity? Yes or no? Yes, based on Valencia, the state law. Thank you. Any other questions by colleagues? No. Alright, thank you very much. Thank you. We'll hear from Mr. Rue's counsel in rebuttal. I guess I just wanna say one thing that addresses Judge Hurwitz's question, and maybe this is more for the benefit of his law clerks, but on page 486 of the Miller decision, it says, of the 29 jurisdictions mandating life without parole for children, it drops a footnote, footnote 13 lists Arizona as one of those states. And as I said, it may be wrong. It may be wrong as a matter of state law. I will defer to your greater expertise than mine, Your Honor, but that's what the Supreme Court said in Miller, that Arizona... So is it your view that Miller settles the issue of whether Arizona had a mandatory LWOP system at the time? Not only does Miller say... I think you wanna say yes. Well, yes. Yes, Miller does say that. But not only did Miller say that, the Arizona Court of Appeals said so in the Vera decision. Well, I'm not sure it did. I think it said, well, we can assume that our system was that way, but we've now fixed it with respect to people who have been offered... Who got a sentence of less than LWOP because we've now reinstated parole. I had a question, and you may be handling this other case. There's a case called Jessup. That's my case, yes. Okay, I figured you were. And it's now up on appeal, and it involves this very issue. Yes. I'm not sure who has priority or something else, but that case is not yet calendared, is it? No. It's the state's appeal from the grant of relief. The state filed its opening brief, I wanna say, last month, and that's where the briefing is in Jessup. Is that the appropriate case to address that issue, or is this case also appropriate to address it? You know, I... Since... Well, I wanna say, since that was the basis for Judge Wake's ruling, it may be more appropriate in Jessup, but since this case comes first and it's here, it may be something to say. I also wanna say that Ronnie Vera's appeal, well, the state's appeal from the grant of Ronnie Vera's habeas petition is also pending before a panel of this court that does have priority, and that panel may address something that's more closely related to this issue. Okay. I have one more question. A quick hypothetical. Again, yes or no, if you can, if your client were sentenced today, and a sentencing judge here in Maricopa County said, I have evidence before me from one expert saying this is transient immaturity, he's capable of change, and another expert who says this individual is reparably corrupt. And I weighed the two, and I've decided to come down on the side of irreparably corrupt. Would that be reviewable? Reviewable in what context, Your Honor? Well, what would we do with that? I hesitate to speculate what this court would do with that. It would have to go through another direct appeal in the state system and then come to... Is there some violation, inherent violation on Miller and Montgomery, if a state court trial judge did that? My... I'm doing exact... He's saying to him, on the record, I'm doing exactly what the Supreme Court told me to do. If the judge says, on the record, I'm doing exactly what the Supreme Court told me to do, I would be hard pressed to say there's a violation of Miller and Montgomery, Your Honor. Thank you. I have one other question before we finish here. I wanna ask you what I ask your opposing counsel, and that is, assuming arguendo, that in the sentencing here, that all of the evidence that would have been required to fully comply with Miller and Montgomery had been presented to the judge, but the law was what it was at the time. The judge weighed all of it and made a determination that he did in this case. Would that comply with Miller and Montgomery, even though the law at that time was different? No, it would not comply with Miller and Montgomery because simply balancing aggravating and mitigating factors and allowing aggravating factors to overcome the transient immaturity of a juvenile defender... I wanna be sure you understand my question. All of those factors have been presented to him, the transient nature and problems of youth and so on. Everything that would be normally presented in a Miller and Montgomery hearing, all of that's presented. He doesn't say anything about it. There are no magic words, but he makes the same kind of an evaluation that he would under Miller and Montgomery. You're saying that it would or would not qualify? It would not qualify as complying with Miller. Because? Because there would be no way to tell from the record that the judge actually determined, maybe not made a specific finding, but determined in the way that Miller requires that the juvenile before him is not constitutionally ineligible for a life without parole sentence. Okay, so I'd ask your opposing counsel whether we treat this like a 3553A situation, where you don't have to tick everything off there and list them as long as the judge has considered them. If all the evidence is there and the judge considers it, why would this not qualify? Well, there's plenty of 3553A law that says the record has to be adequate for appellate review so that a reviewing court can say that the judge considered and made whatever determinations are legally required. I understand that. And what I'm saying is if all that was there, everything required in a brilliant Miller-Montgomery analysis, all the psychologists, all the psychiatrists, everybody testified. But it was in this particular case before Miller was decided. If the judge had all that before him, you're saying that nonetheless, it would not qualify. No, it would not qualify without some evidence that there was this determination in the record. See, the problem we're all grasping with here is the problem of retroactivity. And so if exactly what happened in this case 20 years ago happened today and the judge gave your client LWOP, I think a much stronger case could be made that he knew the law, he may not have made specific findings, and therefore he must have chosen incorrigibility. The problem is trying to figure out what a judge did not knowing that any of this stuff was required. And that's why we're struggling on both sides with this issue. Well, the easy thing for this court to do is direct the district court to grant a petition and make a superior court judge do it, correct? I suspect the state doesn't agree with that. I've well exceeded my time. These are important cases and we had some questions. So thank you both for your argument. Very, very helpful. The case just argued is submitted.
judges: Hawkins, M. Smith, Hurwitz